## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21103-Civ-WILLIAMS/TORRES

PHARMA FUNDING, LLC,

      Plaintiff,

v.

FLTX HOLDINGS, LLC *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT

This matter is before the Court on Pharma Funding, LLC's ("Plaintiff") motion for final default judgment against FLTX Holdings, LLC, Reem Pharmacy, Inc., Sheefa Pharmacy, Inc., A&K Pharmacy, LLC, (collectively, the "Corporate Defendants"), and Kenneth Tripoli and Jeremy David Klein (collectively, the "Individual Defendants"). [D.E. 42]. No response was filed in opposition and the time to do so has passed. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, relevant authorities, and for the reasons discussed below, Plaintiff's motion for final default judgment should be **GRANTED in part** and **DENIED in part**.[1]

---

[1]    On January 29, 2021, the Honorable Kathleen Williams referred Plaintiff's motion to the undersigned Magistrate Judge for disposition. [D.E. 43].

## I. BACKGROUND

Plaintiff filed this action on March 12, 2020, alleging that the Corporate Defendants executed a promissory note in the amount of $3,973,110.28.   [D.E. 1]. The note required 1,248 weekly payments of $15,000 beginning on September 30, 2019.   The Corporate Defendants defaulted on the note when they failed to make the first payment and any payment thereafter.   Plaintiff accelerated payment of the note and, as of July 31, 2020, the Corporate Defendants owe a balance of $4,204,489.59.   Plaintiff claims that the Individual Defendants personally guaranteed the payments and defaulted on their obligations.   Thus, the amended complaint includes causes of action for breach of a loan agreement, breach of a promissory note, civil theft, conversion, breach of a personal guarantee, and constructive trust.   [D.E. 8].

On December 28, 2020, the undersigned issued a Report and Recommendation (the "R&R"), finding that Plaintiff should be entitled to Rule 37 sanctions and default judgment because the Corporate Defendants and the Individual Defendants failed to comply with several discovery court orders.   The Court adopted the R&R on January 12, 2021 [D.E. 41] and gave Plaintiff until January 26, 2021 to file a motion for final default judgment.   Plaintiff complied with that order, filed a motion for final default judgment, and that motion is now ripe for disposition.[2]   [D.E. 42].

---

[2]     The Court has jurisdiction over this case because Plaintiff is a citizen of Delaware and the defendants are citizens of Florida, Illinois, and New Jersey.   The amount in controversy is above the threshold of $75,000.

## II. APPLICABLE PRINCIPLES AND LAW

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining default judgment.   First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default.   *See* Fed. R. Civ. P. 55(a).   Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person.   Fed. R. Civ. P. 55(b)(2).   "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established."   *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b).   *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975)).   "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).   If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that

3

amount.   *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested.   *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985).   Rule 55 does not require an evidentiary hearing on the appropriate amount of damages, and it is within the Court's discretion to choose whether such a hearing should takes place.   *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

## III. ANALYSIS

Plaintiff's motion seeks final default judgment for (1) breach of contract, (2) breach of a promissory note, (3) civil theft, (4) conversion, (5) breach of a personal guarantee, and (6) constructive trust.   Plaintiff asks for $3,973,110.28 in actual damages and requests that this amount be trebled pursuant to California law. Plaintiff also seeks pre-judgment and post-judgment interest, $106,886.50 in fees, $1,558.50 in costs, and a constructive trust on the proceeds of the Corporate and Individual Defendants.   Plaintiff asks that all the relief requested be granted.

### A.   *Choice of Law Principles*

The first question is to determine what law applies to which claims.   When a federal court exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, the court "must apply the choice of law rules of the forum state to

determine which substantive law governs the action." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008) (per curiam).   That means, "as a preliminary matter, the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc.   Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir. 1983)).

The forum state here is Florida, and Florida courts generally enforce choice-of-law provisions in contracts.   *See Gilman Ciocia, Inc. v. Wetherald*, 885 So. 2d 900, 902 (Fla. 4th DCA 2004) ("Florida courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust.") (citing cases).   In fact, "Section 671.105(1), Florida Statutes, 'expressly anticipates that parties may enter into choice-of-law provisions: '[w]hen a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.'" *Arndt v. Twenty-One Eighty-five, LLC*, 448 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020) (quoting *Jet Pay, LLC v. RJD Stores, LLC*, 2011 WL 2708650, at *5 (S.D. Fla. July 12, 2011)).   The underlying contracts here contain several choice-of law provisions where they "shall be

governed by and construed in accordance with the laws of the State of California."
[D.E. 8-7 at 2 (promissory note provision)]; *see also* [D.E. 8-5 at 8] (stating that
under the loan agreement, it "shall be governed by and construed in accordance with
the laws of the State of California.").[3]   As a result, California law applies to
Plaintiff's contractual claims.[4]

For tort claims, Florida uses the "most significant relationship" test set forth
in Restatement (Second) of Conflict of Laws § 145.   *See Trumpet Vine Investments,*
*N.V. v. Union Capital Partners I, Inc.,* 92 F.3d 1110, 1115-6 (11th Cir. 1996).   That
test generally requires a court to consider (1) "the place where the injury occurred";
(2) "the place where the conduct causing the injury occurred"; (3) "the domicile,
residence, nationality, place of incorporation and place of business of the parties";
and (4) "the place where the relationship, if any, between the parties is

---

[3]   Contractual choice-of-law provisions do not extend "to any and all claims or
disputes arising out of . . . the relationship of the parties."   *Green Leaf Nursery v. E.*
*I. DuPont DeNemours and Co.,* 341 F.3d 1292, 1300 (11th Cir. 2003).   The only
exception is that, where the language of a choice-of-law or forum-selection provision
is broadly drafted, courts have been willing to expand the scope of their application
to related tort claims. *See, e.g., Woods v. Christensen Shipyards, Ltd.,* 2005 WL
5654643 at *6 (S. D. Fla. 2005) (applying a forum-selection clause to related tort
claims where the contract provided " 'if any suit or action is filed by any party
to *enforce this Agreement* or *in connection with the subject matter of this*
*Agreement,* venue for such suit or action shall be in the Superior Court for Clark
County, Washington' ") (emphasis in original).   That does not apply here because
the contracts only speak of each specific agreement being governed in accordance
with the laws of California.   None of the agreements cover all tort or other related
claims that might arise from any aspect of the parties' relationship.

[4]   Plaintiff says that California law applies to all claims except for the
constructive trust remedy.

6

centered."  Restatement (Second) of Conflict of Laws § 145(2) (1971).  A court should evaluate these contacts "according to their relative importance with respect to the particular issue."  *Grupo Televisa, S.A.*, 485 F.3d at 1240.  The first contact is generally the most important, as "absent special circumstances, '[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'"  *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008) (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)).  Thus, "[i]n tort actions involving more than one state, all substantive issues should be determined in accordance with the law of the state having the most 'significant relationship' to the occurrence and the parties."  *Merkle v. Robinson,* 737 So. 2d 540, 542 (Fla. 1999) (citing *Bishop,* 389 So. 2d at 1001).

Here, Plaintiff failed to undertake any analysis as to why California law should apply to the tort claims (i.e. civil theft and conversion) alleged in the amended complaint.[5]  Plaintiff merely reasoned that the contractual language was sufficient to apply California law.  But, for the reasons already discussed, that is incorrect.  Plaintiff needed to explain – at the very least – the place where the injury occurred and why California law should apply.  Plaintiff failed, however, to

---

[5]      Under Florida law, conversion and civil theft are considered tort claims.  *See, e.g.*, *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1262 (S.D. Fla. 1994) ("The essence of the tort of conversion is a party's refusal to surrender the property after demand has been made."); *Ames v. Provident Life & Acc. Ins. Co.*, 942 F. Supp. 551, 561–62 (S.D. Fla. 1994) ("The charge of civil theft should be decided by a jury properly apprised of the elements of the tort.").

reference anything in the motion concerning Florida's choice-of-law principles for tort claims and why the laws of California should apply to the allegations presented.

In looking to the amended complaint, almost all of the allegations are unhelpful because there is a lack of clarity on where the injury took place.[6]  The pleading says, for instance, that the Corporate Defendants diverted funds for their own use, but it never explains whether that occurred in Florida, California, or some other jurisdiction.   Searching for the word "California" also leads to a dead end because that only appears on 7 pages of the amended complaint with almost all of the references citing to a California statute.   So, given the absence of any factual allegations to connect the tort claims to California, the law of the forum state (i.e. Florida) would apply by default.   *See Cavic v. Grand Bahama Dev. Co.,* 701 F.2d 879, 882 (11th Cir. 1983) (stating that "under applicable conflict-of-laws principles the law of the forum ([Florida]) would govern the substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction.") (citing cases).

The only other clues as to the relevant jurisdiction are that some of the defendants are citizens of Florida, [D.E. 8 at ¶ 2]; the Corporate Defendants are headquartered in Florida, *id*. at ¶ 25; the Corporate Defendants executed the promissory note in Florida, *id*. at ¶ 59; and the Individual Defendants executed the

---

[6]   We, of course, have no obligation to do the work that Plaintiff should have done in the first place and the inquiry can end there.   But, for the sake of completeness, we examined the amended complaint in an attempt to determine whether the tort claims are governed under California law.

personal guarantee in Florida, *id*. at ¶ 100.   If, however, the most relevant factor is the state where the injury occurred for choice-of-law purposes, that further undermines the applicability of California law because Plaintiff alleges that "the causes of action arose in Florida."   *Id*. at ¶ 25.   And if the causes of action arose in Florida and there are no other allegations with any connection to California – let alone any explanation in the motion itself – then we have no choice but to conclude that Florida law applies to the tort claims whereas California law applies to the contract claims.   We now consider each count in turn.

### B. *Breach of Contract (Count 1)*

The first count is for breach of contract.   Under California law, the elements of a breach of contract claim are (1) the existence of a contract, (2) a plaintiff's performance or excuse for nonperformance, (3) a defendant's breach, and (4) the resulting damages to a plaintiff.   *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, (2011) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822 (1968)).   Each of these requirements is met because there are allegations that, on September 17, 2019, Plaintiff entered into a loan agreement and promissory note with the Corporate Defendants.   [D.E. 8 at ¶¶ 42, 48].   Plaintiff fulfilled its end of the bargain, the Corporate Defendants breached the loan agreement through a divestment of funds, and Plaintiff suffered damages in the sum of $3,973,110.28. *Id*. at ¶¶ 52-53.   Given these well-pled allegations for breach of contract, Plaintiff's motion for final default judgment should be **GRANTED**.

9

C.    *Breach of a Promissory Note (Count 2)*

The second count alleges the breach of a promissory note against the Corporate Defendants.   "A cause of action for nonpayment on a promissory note is one for breach of contract."   *Poseidon Dev., Inc. v. Woodland Lane Estates, LLC*, 152 Cal. App. 4th 1106, 1112 (2007) (citation omitted); *see also In re Fitness Holdings Int'l, Inc.*, 2014 WL 12628681, at *4 (C.D. Cal. Oct. 9, 2014) ("Under California law, the execution of a promissory note creates a contract, and the terms of the note are subject to the parol evidence rule and other principles of contract interpretation.") (citing cases).   That means the same four requirements for breach of contract must be satisfied to sustain a cause of action for the breach of a promissory note, including allegations of (1) a contract, (2) a plaintiff's performance, (3) a defendant's breach, and (4) damages.

Plaintiff's allegations meet these requirements for the reasons already stated because the Corporate Defendants executed a promissory note on September 17, 2019, *id.* at 59-60, and all conditions precedent occurred or had otherwise been performed, *id.* at 45.   The Corporate Defendants failed to pay any of the weekly minimum installment payments, Plaintiff accelerated the loan as a result of that failure, *id.* at 61, and the breach caused actual damages in the amount of $3,973,110.28, *id.* at 62-63, including fees and costs.   Thus, Plaintiff's motion for final default judgment for the breach of a promissory note should be **GRANTED**.

10

**D.** <u>*Civil Theft (Count 3) and Conversion (Count 4)*</u>

Plaintiff's third count is for civil theft.   Plaintiff says that the California Penal Code defines "theft" as follows:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft.

Cal. Penal Code § 484(a).   The California statute also provides that "[e]very person who buys or receives money or that has been obtained in any manner constituting theft . . . [and] knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner . . . shall be punished by imprisonment in a county jail for not more than one year," Cal. Penal Code § 496(a).[7]   Importantly, subsection(c) allows any injured person to bring an action for three times the amount of actual damages – also known as trebled damages – if a violation can be sustained:

> Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

---

[7]   Although criminal liability is allowed under § 496, it is not a perquisite to obtain trebled damages.   *See Bell v. Feibush*, 212 Cal. App. 4th 1041, 1047 (2013) ("Requiring a criminal conviction under section 496(a) or section 496(c) before an injured person could recover treble damages would not advance the stated goal because civil recovery would be limited to those instances in which law enforcement authority decided to initiate and complete prosecutions.").

Cal. Penal Code § 496(c).

Plaintiff's claim for civil theft is premised on a theory of false pretenses[8] and a request to hold the Corporate Defendants liable for three times the amount of actual damages under California law, including costs and fees.  Plaintiff says that "[t]o support a conviction of theft for obtaining property by false pretenses, it must be shown: (1) that the defendant made a false pretense or representation, (2) that the representation was made with intent to defraud the owner of his property, and (3) that the owner was in fact defrauded in that he parted with his property in reliance upon the representation."  *People v. Gibson*, 275 Cal. App. 2d 198, 200 (Ct. App. 1969) (citing cases).

Plaintiff's fourth claim is for conversion, or the "wrongful exercise of dominion over the property of another."  *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).  Under California law, "[t]he elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages[.]" *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (citation and quotation marks omitted). The foundation of a conversion claim rests "neither in the knowledge nor the intent of the defendant," but "the breach of an absolute duty[.]"  *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014) (citation omitted).  Conversion is thus a strict

---

[8]     California courts have found that Cal. Penal Code § 484(a) contemplates civil theft for false pretenses.  *See Bell v. Feibush*, 212 Cal. App. 4th at 1048 ("Section 484 thus defines theft to include theft by false pretense.") (citing *People v. Gomez*, 43 Cal. 4th 249, 255 (2008)).

liability tort in California with questions of a defendant's good faith, lack of knowledge, and motive being generally immaterial. *See id*. While money cannot be the subject of a conversion action unless there is a specific identifiable sum, it is unnecessary for each coin or bill to be earmarked. *See Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941).

The problem with Plaintiff's civil theft and conversion arguments is that they rely on the applicability of California law when the motion should have looked to Florida law since that is the forum state and the place where the causes of action arose.[9]   Under Florida law, a defendant commits civil theft when it "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [a plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [the plaintiff] of its right to or a benefit from the property or (b) appropriate the property to [the defendant's] own use or to the use of any person not entitled to the property." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11 and 812.014(1)).

---

[9]   "The primary difference between conversion and civil theft is the standard of proof the court must apply.   Under Florida law, a party must prove conversion by a preponderance of the evidence," whereas civil theft requires clear and convincing evidence. *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1264–65 (S.D. Fla. 1994) (citing cases).   The elements between the two torts are so similar that only intent differentiates the two. *See Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1061 (S.D. Fla. 2009) ("Under Florida law, '[t]o establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent.'   Because Plaintiffs have successfully pled a claim for conversion, they need only allege criminal intent for the civil theft claim to survive.") (citing *Gasparini,* 972 So. 2d at 1056).

Along the same lines, a conversion claim under Florida law requires a plaintiff to establish that an unauthorized act deprived plaintiff of his right to possess a specific and identifiable item. *See Tambourine Comerico Internacional SA v. Solowsky,* 312 F. App'x 263, 271–72 (11th Cir. 2009). Several courts, applying Florida law to conversion, have found a claim is actionable when a party takes money from another, as long as the money is sufficiently identifiable. *See, e.g., Rosenthal Toyota, Inc. v. Thorpe,* 824 F.2d 897, 902 (11th Cir. 1987) (finding that a conversion was committed when defendant took plaintiff's money with no intention of delivering cars); *Florida Dept. Ins. v. Debenture Guar.,* 921 F. Supp. 750, 757 (M.D. Fla. 1996) (where $1.1 million was not placed into the proper account, the court found the money sufficiently identifiable for a conversion claim to survive a motion to dismiss). Florida law also requires that, when the alleged act amounts to conversion regardless of whether demand is made, demand and refusal are unnecessary to the claim. *See Tambourine Comerico Internacional SA,* 312 F. App'x at 272 (quoting *Goodrich v. Malowney,* 157 So. 2d 829, 832 (Fla. 2d DCA 1963)).

While we would ordinarily look first to the amended complaint to determine if the allegations meet the elements set forth above, we must determine whether these claims should be allowed when Plaintiff already presented a parallel breach of contract claim. Under Florida law, "a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil

14

theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (citing *Fla. Desk, Inc. v. Mitchell Int'l, Inc.,* 817 So. 2d 1059, 1060 (Fla. 5th DCA 2002); *W.C.P.S. of Fla., Inc. v. Standard Brands of Am.,* 707 So. 2d 416 (Fla. 4th DCA 1998); *Rosen v. Marlin,* 486 So. 2d 623, 626 (Fla. 3d DCA 1986)).   This does not mean, however, that there can never be a conversion or civil theft claim if there exists a contractual relationship between the parties.

     As the Third District Court of Appeal explained, there are exceptions to the general rule if a tort claim is independent from a breach of contract claim:

> This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 495 (Fla. 3d DCA 1994) ("[A] plaintiff may not circumvent the contractual relationship by bringing an action in tort.").

*Gasparini*, 972 So. 2d at 1055-56; *see also 1021018 Alberta Ltd. v. Netpaying, Inc.*, 2011 WL 1103635, at *4 (M.D. Fla. Mar. 24, 2011) ("[A] claim for conversion may lie even where a contractual relationship exists between the parties if the alleged conversion exists independently of an alleged failure to perform contractual duties.").   In other words, there is a limited exception if a defendant's acts were not merely a failure to perform under the contract, but "'an affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted.'" *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1362 (M.D. Fla. 2007) (quoting *Pershing Indus., Inc. v. Estate of*

15

*Sanz,*, 740 So. 2d 1246, 1248 (Fla. 3d DCA 1999)).

Florida courts have found that conversion and civil thefts claims constitute more than a breach of contract in two situations.   The first situation arises where defendants or their employees have stolen or embezzled funds, which were entrusted to them by the plaintiffs, for their own benefit.   *See Szterensus v. Bank of Am., N.A.*, 2010 WL 427509, at *1 (S.D. Fla. Feb. 1, 2010) (finding plaintiffs' allegations that the money deposited with defendant bank was stolen by bank employee presented more than mere breach of contract); *Burke v. Napieracz*, 674 So. 2d 756, 758 (Fla. 1st DCA 1996) (noting that defendant's "affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted" gave rise to a tort separate and independent from the breach of contract).   Under those circumstances, "the contract between the parties is irrelevant to the facts surrounding the alleged conversion or [] the [breach of] contract is merely incidental to the conversion." *Szterensus*, 2010 WL 427509, at *3 (citing *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573 (S.D. Fla 1993)).

The second situation arises when a plaintiff owns funds and the money is given to the defendant to temporarily hold in a segregated and identifiable account, which the defendant then refuses to return.   *See 1021018 Alberta*, 2011 WL 1103635, at *4 (finding that defendant had a common-law duty to return funds to plaintiff where plaintiff's entitlement to those funds did not arise out of contract); *Batlle v. Wachovia Bank, N.A.*, 2011 WL 1085579, at *2 (S.D. Fla. Mar. 21, 2011)

(finding that a claim of conversion for money in a bank account was proper where plaintiffs placed a certain amount of money into account and defendant later refused to return that money to plaintiffs); *see also Galstaldi*, 637 F. Supp. 2d at 1059-60 (recognizing conversion claim where "a party pays money to another for a specific purpose, as long as the money is 'delivered at one time, by one act and in one mass.'") (citation omitted).

Here, the civil theft and conversion claim go beyond the underlying contracts because there are allegations that Plaintiff gave the Corporate Defendants a specific set of funds for safekeeping purposes and that the latter failed to segregate the money as Plaintiff instructed them to do so:

> The Payments were delivered to Defendants for safekeeping, intended to be segregated from each Defendant's other accounts, kept as an intact fund to be deposited into the Beneficial Owner Accounts, and not subject to a title claim by Defendants or each of them.

[D.E. 8 at ¶ 89].   Plaintiff also claims, that it entrusted the funds to the Corporate Defendants, that the Corporate Defendants diverted those funds for their own benefit and use, and that the latter failed to return the stolen money:

> Prior to September 17, 2019, Corporate Defendants fraudulently appropriated Payments belonging to Pharma Funding that had been entrusted to them, by receiving such Payments and failing to remit them to Pharma Funding as required, and by misrepresenting to Pharma Funding that such Payments had not been received.
> . . .
> Corporate Defendants had control of the Payments for the use and benefit of Pharma Funding, and they fraudulently appropriated such Payments for a use or uses other than the due and lawful purpose for which those Payments had been entrusted. In particular, Corporate Defendants received or fraudulently redirected Pharma Funding's

money that was required to be deposited into the Beneficial Owner Accounts into other unauthorized account(s).

*Id*. at ¶¶ 74, 76.   Because these allegations meet one if not both of the exceptions that allow for a tort action alongside a breach of contract claim, the only question left is whether the complaint adequately states a claim for civil theft and conversion.

Based on the allegations in the amended complaint, both causes of action have been properly presented because Plaintiff claims that the Corporate Defendants knowingly obtained Plaintiff's property with the intent to permanently deprive. That is, after Plaintiff tendered payment to the Corporate Defendants pursuant to the parties' promissory note and loan agreement, the Corporate Defendants made certain misrepresentations that the funds had not been received.   [D.E. 8 at ¶ 74]. The Corporate Defendants then removed, concealed, or disposed of the payments with the intent to injure or defraud when they redirected the funds to unauthorized accounts for their own use.   *Id*. at ¶ 77.   The Corporate Defendants also knew at the time they entered into these agreements that they had no intention of redirecting these payments back into their designated accounts or reinstating Plaintiff's access to view how the money was spent.   *Id*. at ¶ 78.   This ultimately allowed the Corporate Defendants to defraud Plaintiff in the sum of $3,973,110.28. *Id*. at ¶ 85.   Considering that these allegations are sufficient under Florida law to establish a civil theft and conversion claim, Plaintiff's motion for final default judgment should be **GRANTED** as to counts 3 and 4.

18

**E.**   ***Breach of a Personal Guarantee (Count 5)***

The fifth claim is for the breach of a personal guarantee.   "California courts apply the same legal standard to breach of guaranty claims," as they do to breach of contract claims.   *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1035 (C.D. Cal. 2015) (citing *Harrison Ventures, LLC v. Alta Mira Treatment Center, LLC,* 2010 WL 1929566, *5 (N.D. Cal. May 12, 2010)); *see also MRW, Inc. v. Big–O Tires, LLC,* 2009 WL 3368438, *9 (E.D. Cal. Oct. 16, 2009) ("An action for breach of guaranty is a species of claim for breach of contract").   That means to sustain a cause of action for the breach of a personal guarantee, there must be an allegation for the (1) the existence of a contract, (2) a party's performance under that contract or an excuse for nonperformance, (3) a defendant's breach, and (4) damages.   See *Alvarado v. Aurora Loan Services, LLC,* 2012 WL 4475330, *4 (C.D. Cal. Sept. 20, 2012).

The allegations supporting the breach of a personal guarantee are well taken because, on September 17, 2019, the Individual Defendants executed an agreement, where they guaranteed that all payments and other sums owed to Plaintiff would be paid pursuant to the underlying promissory note and loan agreement:

> Pursuant to Section 2.01 of the Personal Guarantee, in consideration of Pharma Funding's agreeing to enter into the Loan Agreement and Promissory Note with Corporate Defendants, Defendants Tripoli and Klein unconditionally and irrevocably guaranteed all payments and all other sums payable by Corporate Defendants under the Promissory Note and the faithful and prompt performance by Corporate Defendants of each and every one of the terms, conditions, and covenants of the Promissory Note and Loan Agreement to be kept and

19

performed by Corporate Defendants.

[D.E. 8 at ¶ 101].   Plaintiff also alleges that it performed its obligations under the contract, *id*. at ¶ 44, that the Corporate Defendants defaulted on the loan agreement and promissory note, *id*. at ¶¶ 52-53, 61-63, that Plaintiff suffered actual damages in the amount of $3,973,11.28, *id*. at ¶ 85, that the Individual Defendants agreed to each and every term in the loan agreement and promissory note [D.E. 8-7 at 1], and that the Individual Defendants failed to comply with these terms.   Having found these allegations sufficient, Plaintiff's motion for final default judgment as to count 5 should be **GRANTED**.

### F.       *Constructive Trust (Count 6)*

Plaintiff's final cause of action is to establish a constructive trust.   Unlike the preceding counts, Plaintiff says that Florida law applies here because "[t]he law of the forum controls the remedy by which a party enforces his rights and his cause of action, regardless of where his cause of action arose."   *Garner v. Pearson*, 374 F. Supp. 580, 584 (M.D. Fla. 1973).   So, unlike the prior counts that sought to enforce a contractual provision under California law, Plaintiff relies on Florida law for the purposes of establishing a constructive trust.[10]

The constructive trust is a creature of equity and the "formula through which the conscience of equity finds expression."   5 Austin W. Scott, *The Law of Trusts* §

---

[10]     Although Plaintiff is confident that Florida law applies to the constructive trust remedy, Plaintiff only relied on a single case for that proposition.   But, even if we assume that Plaintiff is correct and that Florida law applies, a constructive trust is not appropriate for the reasons that follow.

462, at 3413 (3d ed. 1967) (citation omitted).   A widely accepted definition holds that "[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id.*   The Florida Supreme Court has also described a constructive trust as an equitable remedy designed to prevent the unjust enrichment of person at the expense of another:

> [A] constructive trust is a relationship adjudicated to exist by a court of equity based on particular factual situations created by one or the other of the parties.   The element of intent or agreement either oral or written to create the trust relationship is totally lacking.   The trust is 'constructed' by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem.

*Wadlington v. Edwards*, 92 So. 2d 629, 631 (Fla. 1957).   "[A] court of equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold." *Quinn v. Phipps*, 93 Fla. 805, 814 (1927).   And even when fraud does not acquire a property, "a constructive will be imposed if equity would be offended should the property be retained by the person holding it." *Saporta v. Saporta*, 766 So. 2d 379, 382 (Fla. 3d DCA 2000) (citing *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022 (Fla. 4th DCA 1996)).

A party seeking to establish a constructive trust "must establish it by proof to the exclusion of all reasonable doubt." *Smith v. Smith,* 108 So. 2d 761, 764 (Fla.

21

1959); *see also Harris v. Harris,* 260 So. 2d 854, 855 (Fla. 1st DCA 1972) ("Before a constructive trust in real property will be created, the person claiming such interest must prove beyond a reasonable doubt by clear and convincing evidence those factors which give rise to the trust.").  The four elements required to establish a constructive trust include: (1) a promise, express or implied, (2) a transfer of property and reliance thereon, (3) a confidential relationship, and (4) unjust enrichment.  *See Provence,* 676 So. 2d at 1024.  Ultimately, a constructive trust is a remedial device with the dual objectives of restoring property to its rightful owner and preventing unjust enrichment.

Plaintiff says that a constructive trust should be imposed here because all the elements are alleged in the amended complaint.   But, the problem with establishing a constructive trust is that "equitable relief is only available where there is no adequate remedy at law[.]"   *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994).   And Plaintiff has an adequate remedy at law because it has identified specific funds that should be returned.

The Eleventh Circuit's decision in *Mitsubishi* is instructive on this point. There, the plaintiff sought the equitable remedy of a constructive trust to prevent the dissipation of assets and the district court granted injunctive relief in the form of an asset freeze.   The plaintiff argued on appeal that a preliminary injunction was appropriate to preserve the ability of the district court to order the defendant to disgorge any improperly transferred funds.   Yet, the Eleventh Circuit reversed the

preliminary injunction and rejected the plaintiff's argument with the rationale that:

> This position . . . fails to recognize that constructive trusts are not automatically impressed whenever one party owes another money, and it apparently overlooks the essence of the remedy—that constructive trusts are inherently equitable in nature and that equitable relief is available only in the absence of an adequate remedy at law.

*Id.* at 1518.

The Court determined that legal remedies, including statutory damages under state and federal RICO laws, were sufficient to preclude resort to equitable relief.   And that holding was consistent with a "long and unbroken line of Florida cases" because "in an action at law for money damages, there is simply no judicial authority for an order requiring the deposit of the amount in controversy into the registry of the court . . . or indeed for any restraint upon the use of a defendant's unrestricted assets prior to the entry of judgment."   *Konover Realty Assoc., Ltd. v. Mladen*, 511 So. 2d 705, 706 (Fla. 3d DCA 1987)).

The Eleventh Circuit's reasoning applies with equal force here because "[c]ases in which the remedy sought is the recovery of money (whether as collection on a debt or as damages) do not fall within the jurisdiction of equity . . . and the imposition of a constructive trust generally will not be the appropriate remedy." *Id.*   This is true "even when the cause of action implicates fraud or some other characteristic that would otherwise trigger equity jurisdiction."   *Id.* at 1518-19. And "[t]here is nothing talismanic about pleading an equitable cause of action such that a court can ignore the essence of the remedy sought."   *Storehouse Credit*

*Union, EK. For. v. Cusumano*, 2010 WL 11508264, at *7 (M.D. Fla. July 26, 2010)

(citing *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x

502, 503 (11th Cir. 2007) ("Essentially, the Appellants maintain that they are

automatically entitled to an injunction solely by virtue of the equitable relief they

seek, irrespective of the legal principles that are considered in making such a

determination.   We find the Appellants' arguments lack merit.")).   So, given that

Plaintiff has an adequate remedy at law in the form of money damages, the motion

for final default judgment with respect to the constructive trust remedy should be

**DENIED**.[11]

>    *G.    **Damages***

Having completed a thorough review of each count in the amended complaint,

the next issue is damages.   Plaintiff has established that it should be entitled to

$3,973,110.28 because that is the amount that the Corporate Defendants failed to

pay pursuant to the promissory note and the loan agreement, resulting in claims for

conversion, civil theft, and breach of contract.   The Individual Defendants are also

responsible for that amount because – when they signed the personal guarantee

[D.E. 8-7] – they agreed to be held jointly and severally liable as to *all* terms

included in the promissory note and the loan agreement:

---

[11]   To the extent Plaintiff is concerned about the uncertainty in collecting a
monetary award from the Corporate and Individual Defendants, that does not
entitle Plaintiff to a constructive trust because "[t]he test of the inadequacy of a
remedy at law is whether a judgment could be obtained, not whether, once obtained
it will be collectible."   *St. Lawrence Co. v. Alkow Realty, Inc.,* 453 So. 2d 514, 514–15
(Fla. 4th DCA 1984).

> In consideration of the Lender agreeing to enter into the Note and Loan Agreement and settle its claims with Debtor and Guarantor and as a material inducement to Lender, Guarantor hereby jointly, severally, unconditionally and irrevocably guarantee the payment by Debtor of all payments and all other sums payable by Debtor under the Note and the faithful and prompt performance by Debtor of each and every one of the terms, conditions and covenants of the Note and Loan Agreement to be kept and performed by Debtor.

[D.E. 8-7 at 1].

The next question is whether Plaintiff should be entitled to treble damages under Florida law for civil theft.   *See* Fla. Stat. § 772.11(1) ("Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.").   The general rule is that "damages for civil theft can only be trebled where there is no contractual relationship between the parties." *Rosenthal Toyota, Inc. v. Thorpe,* 824 F.2d 897, 902 (11th Cir. 1987) (citing *Rosen v. Marlin,* 486 So. 2d 623, 624 (Fla. 3d DCA), *rev. denied,* 494 So. 2d 1151 (Fla. 1986)).   However, "[w]here the contract between the parties is entirely irrelevant to the facts surrounding the alleged conversion, or where the contract is merely incidental to the conversion, the contractual relationship between the parties will not except the defendant from potential liability for treble damages." *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573–74 (S.D. Fla. 1993); *see also Szterensus, N.A.*, 2010 WL 427509, at *3 ("[D]espite this general

prohibition, 'the contractual relationship between the parties will not except the defendant from potential liability for treble damages' where the contract between the parties is irrelevant to the facts surrounding the alleged conversion or where the contract is merely incidental to the conversion.") (quoting *Leisure Founders, Inc*. 833 F. Supp. at 1575-74).

This case meets the exception to the general rule because, for the reasons already explained, the civil theft claim is independent and, at best incidental, from the contractual claims.   That is, the alleged acts were not merely a failure to perform under a contract, but "'an affirmative and intentional act of converting the funds to [their] own use by allegedly stealing the monies to which [they] w[ere] entrusted.'"   *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1362 (M.D. Fla. 2007) (quoting *Pershing Indus., Inc. v. Estate of Sanz*, 740 So. 2d. 1246, 1248 (Fla. 3d DCA 1999)).   That is enough to unlock the availability of treble damages even though the parties were in a contractual relationship. Plaintiff's claim for actual damages in the amount of $3,973,110.28 should therefore be increased threefold to $11,919,330.80.

## H.   *Pre-judgment Interest and Post-Judgment Interest*

Plaintiff's next request is for pre-judgment interest and post-judgment interest.   "When jurisdiction is founded on diversity, as is the case here, state law governs the award of prejudgment interest, while federal law determines post-judgment interest."   *Washington Mut. Bank v. Crest Mortg. Co.*, 418 F. Supp.

2d 860, 862 (N.D. Tex. 2006) (citing *Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.,* 288 F.3d 222, 234 (5th Cir. 2002); *Harris v. Mickel,* 15 F.3d 428, 429 (5th Cir. 1994); 28 U.S.C. § 1961(a)).

Prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to address." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). In determining how to award prejudgment interest, "[d]istrict courts sitting in diversity are to apply the choice-of-law rules of the forum state." *Washington Mut. Bank*, 418 F. Supp. 2d at 862 (citing *Smith v. EMC Corp.,* 393 F.3d 590, 597 (5th Cir. 2004)); *Arleth v. Freeport–McMoran Oil & Gas Co.,* 2 F.3d 630, 636 (5th Cir. 1993) (applying state prejudgment interest law to state law claims). Since that forum is Florida and courts here "generally enforce choice-of-law provisions 'unless the law of the chosen forum contravenes strong public policy," California law applies. *Walls v. Quick & Reilly, Inc.,* 824 So. 2d 1016, 1018 (Fla. 5th DCA 2002) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,* 761 So. 2d 306, 311 (Fla. 2000)).

The loan agreement and promissory note say that California law should govern and that when a person "is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, [the plaintiff] is entitled also to recover interest

thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt."   Cal. Civ. Code § 3287(a).   If a contract does not stipulate a legal rate of interest, "the obligation shall bear interest at a rate of 10 percent per annum after a breach."   Cal. Civ. Code § 3289(b).

Here, the loan agreement and the promissory note set an interest rate at 10% per annum.   *See, e.g.*, 8-6 at 1 (""[S]aid interest to be at the rate of Ten precent (10%) per annum, in arrears until paid in full as follows")].   This agreed upon rate should be enforced because "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation."   Cal. Civ. Code § 3289(a).[12] Because the Corporate Defendants breached the loan agreement on September 17, 2019 through their unlawful acts, the motion for prejudgment interest be **GRANTED** on the actual damages amount of $3,973,110.28 at 10% per annum[13] and recoverable from the time of the breach to the date of the judgment.

---

[12]    "[P]re-judgment interest is traditionally granted in contract actions where the damages are capable of being made certain by calculation."   *Sheet Metal Workers Int'l Ass'n, Local Union No. 162 v. Jason Mfg., Inc.*, 694 F. Supp. 1476, 1478 (E.D. Cal. 1987) (citing *Leff v. Gunter*, 33 Cal.3d 508 (1983)).

[13]    As of January 26, 2021 (the date of the motion), Plaintiff says that the pre-judgment interest totals $507,933.83 plus $1,088.52 per day until the date of the judgment.   Plaintiff also claims that no case in California has decided the issue of whether pre-judgment interest should be allowed for the trebled damages awarded under Cal. Penal Code § 496(c).   This is immaterial because, as we stated earlier, Florida law applies to the treble damages available for the civil theft claim.   In any event, Plaintiff only seeks prejudgment interest on actual damages – not the threefold amount so that moots the discussion altogether.

28

For post-judgment interest, federal law governs.   *See Boston Old Colony,* 288 F.3d at 234.   The federal post-judgment interest rate is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average 1–year constant maturity Treasury yield for the calendar week preceding the date of the judgment. Plaintiff's motion for post-judgment interest should be **GRANTED** and the Court should award the applicable rate from the date of the judgment until paid.

### I.    *Costs*

The following issue is Plaintiff's request for costs.   Under Fed. R. Civ. P. 54(d)(1), a prevailing party[14]  is entitled to recover costs as a matter of course unless directed otherwise by a court or statute.   A strong presumption exists in favor of awarding costs.   *Id.*   A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920.   *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920).   "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so."   *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000).

---

[14]    Plaintiff is the prevailing party because "[a]n entry of default judgment establishes Plaintiff as the prevailing party and Plaintiff is therefore entitled to recover costs under § 1920."   *Maersk Line A/S v. Rapid Tow, LLC*, 2019 WL 11506029, at *3 (S.D. Fla. Dec. 13, 2019), *Report and Recommendation adopted*, 2020 WL 7492336 (S.D. Fla. Jan. 8, 2020) (citing *Amadi v. Ace Homecare, LLC*, 2019 WL 1392453, at *2 (M.D. Fla. Mar. 28, 2019) ("A plaintiff whose motion for default judgment has been granted is a prevailing party.")).

The court should not take into consideration the relative wealth of the parties, as it would undermine the presumption that Rule 54(d)(1) creates in favor of the prevailing parties. *See id.* Upon the filing of a timely motion for costs, which sets forth in detail the amounts requested, the opposing party has the burden of showing that the requested costs fall outside the scope of this statute or are otherwise unreasonable.[15] *See, e.g., Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016, at *14 (S.D. Fla. Apr. 14, 2009) (finding that the burden lies with the challenging party to show that depositions were not related to an issue in the case at the time they were taken, and thereby show they were not wholly or partially Anecessarily obtained for use in the case.").

Plaintiff seeks to recover $1,588.50 in costs, including $400 for filing this action and $1,188.50 in service of process costs. The $400 request is well taken because clerk fees are specifically taxable under 28 U.S.C. § 1920(1). *See Goodman v. Sperduti Enter., Inc.*, 2009 WL 3200681, at *3 (S.D. Fla. Oct. 6, 2009) ("There is

---

[15]    Pursuant to Section 1920, a court may award the following costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

no question that Plaintiff is entitled to the cost of the filing fee because it falls into one of the categories of reimbursable costs under 28 U.S.C. § 1920[.]").   Plaintiff's motion to recover $400 in filing costs should therefore be **GRANTED**.

Plaintiff's second request is for $1,188.50 for the service of a summons and a subpoena on each of the defendants.   "Pursuant to [Section] 1920(1), fees of the clerk and marshal may be taxed as costs.   This includes service of process costs." *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007) (alteration and internal quotations marks omitted) (citing *EEOC v. W & O Inc.*, 213 F.3d 600, 623 (11th Cir. 2000)).   "The Eleventh Circuit has held that private process server fees may be taxed under [S]ections 1920(1) and 1921, so long as the taxable costs of the private process server are limited to the statutory fees authorized by [S]ection 1921." *Flagstar Bank, FSB v. Hochstadt*, 2010 WL 1226112, at *9 (S.D. Fla. 2010) (footnote omitted) (citing *W & O Inc.*, 213 F.3d at 624).   "This is currently $65 per person per hour for each item served, plus travel costs and any other out-of-pocket expenses." *Cont'l 332 Fund, LLC v. Hilz*, 2020 WL 6595061, at *3 (M.D. Fla. 2020) (citing 28 C.F.R. § 0.114(a)(3)). "[I]nvoices submitted to substantiate these expenses must 'provide sufficient or intelligible details as to what exactly was paid for.'" *Mid-Continent Cas. Co. v. JWN Constr., Inc.*, 2019 WL 8402872, at *3 (S.D. Fla. 2019) (alteration omitted) (quoting *Cortez v. Tom Thumb Food Stores, Inc.*, 2013 WL 12383258, at *4 (S.D. Fla. 2013)).

31

The problem with this cost request is that neither the motion nor the attached invoices provide an explanation as to why any costs above the $65 threshold should be awarded.   Plaintiff should thus be limited to $65 for the service of a subpoena/summons on each defendant, or a total of $325.   *See Cont'l 332 Fund, LLC*, 2020 WL 6595061, at *3 (denying the movants' request for service fees because they did not provide information to justify why and how the costs were necessarily incurred); *Regions Bank v. Roth*, 2018 WL 3213331, at *4 (M.D. Fla. 2018) ("Because [the movant's] submission does not indicate the hourly rate of the private process server, I find that [the movant] should be awarded $65.00 for costs associated with service of the Summons and Complaint."); *Mid-Continent Cas. Co.*, 2019 WL 8402872, at *4 ("Because [the movant] has not provided sufficient evidence justifying the need for multiple service attempts, the undersigned recommends awarding the actual cost of one completed service."); *Wiand v. Wells Fargo Bank, N.A.*, 2015 WL 12839237, at *8 (M.D. Fla. 2015) ("[A]ny service of process without supporting documentation of time spent and additional costs . . . is limited to recovery of $65.00."); *Primerica Life Ins. Co. v. Guerra*, 2017 WL 5713927, at *4 (S.D. Fla. 2017) ("As for the $1,030.00 fee for foreign process server fees, I recommend an award of $65.00 . . . because [the movant] failed to provide the Court with sufficient information to determine her entitlement to recover a greater amount.").   Plaintiff's motion to recover costs for the service of a summons and a

subpoena should be reduced to $325.   To this extent, Plaintiff's motion for costs should be **GRANTED in part** and **DENIED in part** with a total recovery of $725.

### J.    *Fees*

Turning to Plaintiff's request for fees, the "American Rule" generally provides that the prevailing party in litigation may not collect its attorney's fees from the losing party.  *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598, 602 (2001).   That is, each party – including the prevailing party – must ordinarily bear its own fees.   The rationale of the "American Rule" is that "since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit."  *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984).

Certain exceptions, however, do exist that allow a prevailing party to recover its fees.  *See id.*; *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1329 (11th Cir. 1998) ("Florida conforms to the 'American Rule' under which attorneys' fees are awarded only when permitted by statute or contract." (citing *Cook v. Deltona Corp.,* 753 F.2d 1552, 1563 (11th Cir. 1985)).   These exceptions include: "(1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith."   *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019).

Plaintiff requests $106,886.50 in fees[16] because the underlying contracts allow for fees under California state law.[17]   *See Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010) ("Just as a federal court must apply state law to determine whether a party is entitled to fees, it must also apply state law to resolve disputes about the reasonableness of fees.") (citing cases). "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).   "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."   *Margolin v. Reg'l Planning Com.*, 134 Cal. App. 3d 999, 1004 (Ct. App.

---

[16]     Plaintiff is entitled to fees under California Penal Code § 496(c); ¶ 27 of the master purchase agreement, ¶ 3.02 of the personal guarantee, ¶ 7.14 of the loan agreement, and ¶ 8 of the promissory note.

[17]     There does not appear to be any material differences between California law and the federal lodestar approach in computing a reasonable fee award.   *See, e.g.*, *Fisher Sci. Int'l, Inc. v. Modrovich*, 2005 WL 3348901, at *3 (S.D. Tex. Dec. 8, 2005) ("In exercising its discretion in awarding attorneys' fees and expenses against a party, this Court has given careful attention to the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which is the principal foundation for that familiar body of Fifth Circuit law regarding awards of attorneys' fees.   California law, which applies to the contract, does not appear in conflict with these considerations.") (citing *See PLCM Group, Inc.*, 22 Cal. 4th at 1084).   Even if Florida law applied, there would still be no difference with respect to the lodestar because Florida has explicitly adopted the federal lodestar approach.   *See Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010) ("Florida has adopted the federal lodestar approach as the foundation for setting reasonable fee awards.") (citing *Florida Patient's Compensation Fund v. Rowe,* 472 So. 2d 1145, 1150 (Fla. 1985)).

1982) (citing cases).   The reasonable hourly rate is the prevailing rate in the community for similar work.   *See id.* at 1004.

"After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case before it, including the novelty and difficulty of the case, the attorneys' skill in presenting the issues, the amount involved and degree of success achieved, the extent to which the case precluded the attorneys from accepting other work and the contingent nature of the work."   *Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309, 1321 (2014) (citing cases).   There is "no hard and fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation."   *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 824 (2001).   This means that the lodestar figure may be adjusted based on factors specific to the case, in order to fix the fee at the fair market value for the legal services provided.   This approach anchors a court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary.

While the court is permitted to adjust the lodestar figure pursuant to a variety of factors, there is a strong presumption that the lodestar is reasonable.   *See Johnson v. Lin*, 2016 WL 1267830, at *1 (E.D. Cal. Mar. 31, 2016).   The fee applicant has the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.   *See Jordan v. Multnomah Cnty.*, 815

35

F.2d 1258, 1263 (9th Cir. 1987).   Similar decisions with respect to the reasonableness of a rate sought may provide evidence to support a finding of reasonableness.   *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by the district court based, in part, on the rate awarded to same attorney in another case, was reasonable).   The fee applicant must also provide detailed time records justifying the hours expended.   *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

Looking first to the hourly rates requested, "the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." *569 E. Cty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 437 (2016).   Here, Plaintiff hired five legal professionals – consisting of three lawyers and two paralegals – to work on this matter including (1) Normal Segall ("Mr. Segall") at $495/hour, (2) Cynthia Barnett Hibnick ("Ms. Hibnick") at $495/hour, (3) Lori Sochin ("Ms. Sochin") at $495/hour, Ana Casalis (Ms. Casalis") at $185/hour, and Jenney Perez ("Ms. Perez") at $150/hour.   Plaintiff says that these rates are reasonable because of each lawyer's or paralegal's substantial experience and record of achieving favorable outcomes for their clients.

36

Mr. Segal, Ms. Hibnick, and Ms. Sochin have, for example, practiced law in Florida for 48, 38, and 27 years, respectively.   Plaintiff also suggests that the rates for the two paralegals are reasonable because of their educational experience, knowledge of the legal system, and their ability to handle complex tasks.[18]   Given these factors and others, Plaintiff concludes that the rates requested are reasonable and consistent with lawyers practicing in the Southern District of Florida with a substantial amount of experience in complex civil litigation.[19]   [D.E. 42-3 ("I believe that L|R's fees charged pursuing this matter are equal to, or less than, the fees that would customarily be charged in the South Florida market and the markets of the areas where I have been admitted to practice *pro hac vice*, to obtain similar results.")].

We agree that the three lawyers who worked on this case are knowledgeable, talented, and experienced.   But, the rates are excessive for a case premised largely[20] on breach of contract claims and where the case resulted in a default

---

[18]   Plaintiff never makes clear why the two paralegals billed at different rates, but it appears that the difference goes to their individual levels of experience.

[19]   A party seeking attorney's fees bears the burden of demonstrating that the requested hourly rates are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks omitted).   "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979.   So, although California law applies, the relevant market for determining a reasonable rate is Florida.

[20]   Three of the six counts required the same four elements: (1) the existence of a contract, (2) a plaintiff's performance, (3) a defendant's breach, and (4) damages.

judgment.   This case is also not complex; it did not go to trial; it has only been pending for approximately one year; and there was no need to complete all the briefing on the motion for partial summary judgment because, by that point, the Corporate and Individual Defendants abandoned the case.   The market rates for South Florida lawyers are also much lower than other areas of the country with only a small percentage billing at the rate requested:

> South Florida attorney hourly rates seem to be a solid group with a large percentage in the $200-$300 range, a second tier of $450-to $500-an-hour attorneys and a handful in the $600 range." Mary Welch Research by Richard Hallman Special to the Review, *Lawyer Compensation: Billing Rates Remain Firm with Limited Increases*, Daily Business Review, October 5, 2015

*Fid. Life Ass'n v. Cohen*, 2017 WL 11220364, at *3 (S.D. Fla. Oct. 11, 2017), *Report and Recommendation adopted*, 2017 WL 11220357 (S.D. Fla. Oct. 27, 2017) (finding hourly rates of    $325    and    $525    per    hour    to    be    reasonable in breach of contract case).   Taking these factors into consideration along with the complexity of the case, the quality of the representation, the individual years of experience and all other pertinent factors, $400 is more appropriate as a reasonable hourly rate for Mr. Segal, Ms. Hibnick, and Ms. Sochin.

The same reasoning applies to the two paralegals because – while they seek to recover a rate of $185/hour and $150/hour – this is excessive for the South Florida legal community.   The most that the Court should award each paralegal is $100/hour for the same reasons already stated.   *See Rodriguez v. Guilfoyle*, 2019 WL 2254926, at *3 (S.D. Fla. Feb. 1, 2019), *report and recommendation adopted*,

2019 WL 2255019 (S.D. Fla. Mar. 1, 2019) ("We also find that Mr. Hernandez's request for an hourly rate of $150 for his legal assistant is excessive and, as a result, we reduce the rate requested to $ 100 per hour.") (citing *Medrano v. Mi Colombia Bakery, Inc.*, 2013 WL 1748403, at *3 (S.D. Fla. Jan. 10, 2013)). If this case had been more complex or proceeded to trial, a higher rate for the paralegals may have been more appropriate.

The second step of the lodestar method is to determine a reasonable number of hours expended. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) ("[A]n attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent,* including those relating solely to the fee.") (emphasis in original, citation omitted). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citations omitted). "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id*.

We find that the number of hours is excessive because the tasks performed do not go hand in hand with the legal professionals that worked on this case. For example, Mr. Segall and Ms. Hibnick spent copious amounts of time sending emails, taking telephone calls, reviewing mundane documents, and otherwise researching

matters that should not have taken such a long period of time.    This case was just filed back on March 12, 2020 [D.E. 1] and the docket is a mere 43 entries with many of those consisting of court orders.    It is also unclear why there are so many billable hours for a case where the Corporate and Individual Defendants largely abandoned a defense of this action, failed to respond to a motion for summary judgment, and failed to comply with their discovery obligations.    Making matters worse, this case was not all that complex and it is even more uncertain why three senior attorneys and two paralegals were needed to achieve this outcome.    *See, e.g., Juan Garibay v. Arbolida*, 2020 WL 5983932, at *7 (C.D. Cal. June 2, 2020) ("Given the simplicity of the case . . . and the lack of any opposition, no more than one attorney and one paralegal was necessary to prosecute this case.    Thus, the court will reduce the fee award by cutting the fees for two of the three attorneys.    The court will only award fees for the work performed by attorney Handy."); *Arroyo v. Matar*, 2020 WL 4258652, at *7 (C.D. Cal. Mar. 18, 2020) ("The assignment of so many attorneys to such a simple case with no opposition resulted in substantial task padding, duplication, over-conferencing, attorney stacking, and overall excessiveness.") (citing cases).

To correct for this shortfall, the Court should apply a 20% percent across-the-board reduction to the number of hours expended.  This includes the 108.32 hours for Mr. Segal, the 102.2 hours for Ms. Hibnick the 1.3 hours for Ms. Sochin, the 9.7 hours for Ms. Casalis, and the 34.6 hours for Ms. Perez.  *See*

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("The court has discretion to make such [a 25%] adjustment, but we cannot sustain a cut that substantial unless the district court articulates its reasoning with more specificity.").[21]   As a result of a 20% reduction, the revised hours for each lawyer and paralegal should be the following: 86.6 hours for Mr. Segal's hours, 81.76 hours for Ms. Hibnick, 1.04 hours for Ms. Sochin, 7.76 hours for Ms. Casalis, and 27.68 hours for Ms. Perez.   When these reduced hours are paired with the already reduced rates, Plaintiff should recover $34,640 for Mr. Segal (86.6 multiplied by 400/hour), $32,704 for Ms. Hibnick (81.76 multiplied by 400/hour), $416 for Ms. Sochin (1.04 multiplied by 400/hour), $776 for Ms. Casalis (7.76 multiplied by 100/hour), and $2,768 for Ms. Perez (27.68 multiplied by 100/hour).   Accordingly, Plaintiff's motion for fees should be **GRANTED in part** and **DENIED in part** with a total fee award of $71,304.

## *IV. CONCLUSION*

For the foregoing reasons, Plaintiff's motion for final default judgment should be **GRANTED in part** and **DENIED in part**:

A.   Plaintiff's motion for final default judgment on counts 1-5 for breach of contract, breach of a promissory note, civil theft, conversion, and breach of a personal guarantee should be **GRANTED**.

B.   Plaintiff's motion for final default judgment as to count 6 for

---

[21]   Plaintiff only sought a lodestar multiplier of 1.0, meaning it had no effect on amount of the fees requested.

constructive trust should be **DENIED**.

C.     Plaintiff should recover $3,973,110.28 in actual damages with the Corporate Defendants and the Individual Defendants jointly and severally liable.[22]  That amount should be trebled to $11,919,330.80 pursuant to the civil theft claim under Florida law.

D.     Plaintiff's motion for post-judgment interest should be **GRANTED** and the Court should award the applicable rate from the date of the judgment until paid.

E.     Plaintiff's motion for prejudgment interest should be **GRANTED** on the actual damages amount of $3,973,110.28 at 10% per annum.

F.     Plaintiff's motion for costs should be **GRANTED in part** and **DENIED in part** with a total recovery of $725.

G.     Plaintiff's motion for fees should be **GRANTED in part** and **DENIED in part** with a recovery of $71,304.

H.     Plaintiff should recover a total monetary judgment of $11,991,359.80,

---

[22]     Plaintiff requested that the Individual Defendants be held jointly and severally liable for the total monetary judgment, including the trebled damages. But, Plaintiff failed to present any substantive reasons in support of that request. The civil theft claim was only alleged against the Corporate Defendants and the pleading only requests that they be held liable for the threefold increase – not the Individual Defendants.   While the promissory note includes a provision on joint and several liability, that is limited to the actual damages and any interest, fees, and costs needed to enforce that agreement.   Nothing speaks to the Individual Defendants being jointly and severally liable for trebled damages.   And given that the contractual claims are independent from the tort claims for the reasons already discussed, we do not see why the Individual Defendants should be held jointly and severally liable for the total monetary judgment.

subject to pre-judgment and post-judgment interest.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 8th day of March, 2021.


/s/ *Edwin G. Torres*
_____
EDWIN G. TORRES
United States Magistrate Judge

43